UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **VESTER MARIE COLEMAN** | * | **CIVIL ACTION NO.  09-0759** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

## Background & Procedural History

Vester Marie Coleman protectively filed the instant application for Title XVI Supplemental Security Income payments on April 14, 2005. (Tr. 116). She alleged disability since November 10, 2004, because of high blood pressure, crippling arthritis, and swelling in her stomach and feet. (Tr. 129-130). The application was denied at the initial stage of the administrative process. (Tr. 75-77, 91-94). Thereafter, Coleman requested and received a February 22, 2006, hearing before an Administrative Law Judge ("ALJ"). (Tr. 290-303). However, in an August 4, 2006, written decision, the ALJ determined that Coleman was not disabled under the Act. (Tr. 78-88). Accordingly, Coleman appealed the adverse decision to the Appeals Council. On January 24, 2007, the Appeals Council granted Coleman's request for review, vacated the ALJ's decision, and remanded the case for further proceedings. (Tr. 104-

106).

Upon remand, two more hearings were held before the same ALJ on May 10, 2007, and February 6, 2008. (Tr 304-327). However, in an April 29, 2008, written decision, the ALJ determined that Coleman was not disabled under the Social Security Act, finding at Step Four of the sequential evaluation process that she was able to return to her past relevant work as a fork lift operator and "cotton gin." (Tr. 21-32). Coleman appealed the adverse decision to the Appeals Council, but to no avail. (Tr. 7-10). Therefore, the ALJ's decision became the final decision of the Commissioner. *Id.*

On May 11, 2009, Coleman sought review before this court. She alleges the following errors,

(1) the ALJ's determination that plaintiff can perform the exertional demands of medium work is not supported by substantial evidence;

(2) the ALJ committed reversible error by failing to comply with the Appeals Council's remand order; and

(3) the ALJ's Step Four determination that plaintiff can perform her past relevant work is not supported by substantial evidence.

**Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v.*

*Perales*, 402 U.S. at 401.  Substantial evidence lies somewhere between a scintilla and a preponderance.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.  *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

### Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

    (1)    An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

> (2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.
>
> (3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.
>
> (4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.
>
> (5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

See, Boyd v. Apfel, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I. Steps One, Two, and Three

The ALJ determined at Step One of the sequential evaluation process that Coleman did not engage in substantial gainful activity during the relevant period. (Tr. 26). At Step Two, he found that Coleman suffers severe impairments of chest pain; arterial hypertension; chronic obstructive pulmonary disease; major depressive disorder with psychotic features; schizoaffective disorder with psychotic features; anxiety disorder, NOS; hypochondriasis; and a history of alcohol abuse. (Tr. 26). He concluded, however, that the impairments were not severe

enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. (Tr. 26).

## II.     Residual Functional Capacity

The ALJ next determined that Coleman retained the residual functional capacity for medium work,[1] except for marked limitations in the ability to understand, remember, and carry out complex instructions and to make judgments on complex work-related decisions, as well as moderate limitations in the ability to interact appropriately with the public, supervisors and co-workers and to respond appropriately to usual work situations and to changes in a routine work

---

[1] Medium work is defined and explained by Social Security Ruling 83-10. It provides:
>   [t]he regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.
>
>   The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist). Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward). However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semi-skilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

Social Security Ruling 83-10

setting. (Tr. 29). Moderate is defined as satisfactory. *Id*.

Plaintiff contends that the ALJ's determination that she retains the exertional capacity for medium work is not supported by substantial evidence.[2] Quoting Social Security Ruling 96-8p, the Fifth Circuit has observed that,

> a residual functional capacity (RFC) is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule. The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work. . . . RFC involves both exertional and nonexertional factors. Exertional capacity involves seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately. In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis. . . . The RFC assessment must include a resolution of any inconsistencies in the evidence.

*Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (citations and internal quotation marks omitted).[3]

In this case, neither the ALJ nor any physician of record analyzed plaintiff's physical residual functional capacity on a function by function basis. The closest that anyone came to doing so was David Hebert, M.D., in the course of his July 11, 2005, consultative examination. (Tr. 183-185). In his ensuing report, Hebert remarked that Coleman complained of severe arterial hypertension for the last eight years, arthritis, and an extremely arthritic left knee. *Id*. Upon examination, however, all of her joints exhibited a full range of motion. *Id*. She also

---

[2] Plaintiff does not challenge the sufficiency of the ALJ's determination regarding the effects of her mental impairments. Indeed, there is substantial record evidence to support this aspect of the ALJ's residual functional capacity assessment. *See e.g.*, Tr. 259-261.

[3] Although Social Security Rulings are not binding on the federal courts, *Myers, supra*, they are "binding on all components of the Social Security Administration. 20 C.F.R. § 402.35 (b)(1).

6

demonstrated a full range of motion in the lumbar spine. *Id*. Her gait and station were completely normal. *Id*. Motor strength in all areas was 5/5. *Id*. Hebert diagnosed atypical chest pain; arterial hypertension, poorly controlled, with no evidence of end-organ damage; mild chronic obstructive lung disease, mostly chronic bronchitis because of significant tobacco consumption; non-specific arthralgia, with no impairment of function in the joints; and finally, no evidence of significant mental impairment. *Id*. Medically, Hebert saw no reason why Coleman could not engage in "routine" walking, sitting, standing, carrying, and lifting for an eight hour day. *Id*.

  The difficulty with Hebert's evaluation, however, is that he does not explain what he means by "routine." Does this mean that the claimant retains the exertional capacity for light, medium, or heavy work? Alternatively, does it mean that she has no significant limitation of functioning at all? A potential resolution to this question presents itself in a July 27, 2005, notation by a non-examining agency physician, Johnny Craig, M.D., who apparently reviewed Hebert's report before finding that plaintiff's physical impairments were not severe. (Tr. 75-76). Nonetheless, the ALJ rejected this approach. In his decision, he observed that since the time of the agency determination in July 2005, the Commissioner had received additional medical evidence which suggested that Coleman's impairments were more limiting than the state examiners originally had concluded. (Tr. 31).

  This approach by the ALJ is perfectly reasonable – provided the remaining record included a subsequent medical source statement, or testimony by the claimant, to support the ALJ's eventual assessment. However, the record is not so disposed, and Dr. Hebert's report provides no comfort. Indeed, the ambiguity inherent in Dr. Hebert's report is confirmed by the two decisions issued by the same ALJ in this case. In his original decision that was vacated by the Appeals Council, the ALJ interpreted Hebert's report as supporting an exertional capacity for

light work. *See* Tr. 85-86.  In the ALJ's current decision, the same evidence inexplicably is used to support an exertional capacity for medium work.

In sum, it is apparent that the ALJ autonomously derived the exertional component of plaintiff's residual functional capacity.  However, in the absence of any valid medical assessment or other corroborating evidence to support the ALJ's residual functional capacity determination, the court is constrained to find that the ALJ's assessment is not supported by substantial evidence.  *See Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) (unpubl.) ("an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Ripley v. Chater,* 67 F.3d 552, 557 -558 (5th Cir. 1995) (substantial evidence lacking where:  no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).

The court further observes that as part of his residual functional capacity assessment, the ALJ discounted the effects of plaintiff's hypertension on the basis that Coleman was non-compliant with her medication.  Under the regulations, claimants must follow the treatment prescribed by their physicians if the treatment can restore the claimant's ability to work.  20 C.F.R. § 404.1530.  If a claimant fails to follow prescribed treatment without good reason, the claimant will not be entitled to disability.  *Id*.  Nevertheless, the Commissioner may not deny benefits for failure to comply with prescribed treatment unless the Commissioner first provides notice to the claimant.  *Tristan v. Barnhart*, No. SA-05-CA-1223-OG, 2007 WL 496853, at *14 (W.D. Tex. Feb. 2, 2007);  *Alcorta v. Barnhart*, No. SA-02-CA-0472, 2006 WL 3827003, at *11 (W.D. Tex. Dec. 28, 2006).  Social Security Ruling 82-59 provides that "before [such] a

determination is made, *the individual . . . will be informed of this fact and* of its effect on eligibility for benefits." SSR No. 82-59 (1982) (emphasis added). Second, the claimant "will be *afforded an opportunity to undergo the prescribed treatment or to show justifiable cause for failing to do so*." *Id.* (emphasis added); *see also* 20 C.F.R. § 416.930 ("If you do not follow the prescribed treatment *without a good reason*, we will not find you disabled . . .") (emphasis added).

Here, there is no indication that notice was provided to Coleman, or that she was afforded an opportunity to demonstrate good cause for her alleged failure to comply with treatment.

Plaintiff also emphasizes additional evidence that she submitted in connection with her request for review before the Appeals Council. The evidence reflects, *inter alia*, diagnoses for coronary artery disease and hypertension following a positive stress test in July 2008 and an elective heart catheterization. (Tr. 262-289). Whether these medical records support a condition that afflicted plaintiff throughout the relevant period, or merely reflect a subsequent deterioration of her health, may be addressed by the Commissioner upon remand.[4]

**III.    Step Four**

At Step Four of the sequential evaluation process, the ALJ employed a vocational expert ("VE") to find that Coleman was able to return to her past relevant work as a forklift operator and "cotton gin," as this job(s) is generally performed in the national economy. (Tr. 31).[5]

---

[4] The court notes that the new medical records also reflect that plaintiff was working as a laundry worker during the relevant period. (Tr. 265). Furthermore, in her petition for leave of court to proceed *in forma pauperis*, plaintiff acknowledged that until September 2008, she worked at the Best Western Inn, earning $6.15 per hour, 20 hours per week. [doc. # 2]. Although it appears that this work was not performed at the presumptively substantial gainful activity level, *see* 20 C.F.R. § 416.974, it is potentially relevant to the analysis of her residual functional capacity.

[5] Past relevant work is defined as "the actual demands of past work or 'the functional demands ... of the occupation as generally required by employers throughout the national

As an initial matter, plaintiff contends that the ALJ failed to fully comply with the Appeals Council's remand order requiring him to incorporate plaintiff's residual functional capacity into specific hypotheticals to the VE and to identify and resolve any conflicts between the VE's testimony and the Dictionary of Occupational Titles pursuant to Social Security Ruling 00-4p. By regulation, the ALJ is obliged, on remand, to effect the actions ordered by the Appeals Council. 20 C.F.R. § 404.977(b). Moreover, where the rights of individuals are affected, an agency must follow its own procedures, even where the procedures are more rigorous than otherwise would be required (*e.g.* by case law). *See, Hall v. Schweiker,* 660 F.2d 116, 119 (5th Cir. 1981) (citations omitted). If an agency violates its own rules, with resulting prejudice, then the underlying proceedings are tainted, and any resulting actions cannot stand. *Id*. Nonetheless, "[p]rocedural perfection in administrative proceedings is not required." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988). Procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988). Thus, to obtain remand because of an ALJ's failure to comply with an Appeals Council order, plaintiff must demonstrate that the ALJ's omission(s) substantially affected the outcome.

In this regard, plaintiff emphasizes that, at least initially, the ALJ's questioning of the VE was limited to ensuring that a hypothetical claimant with the limitations on mental functioning that the ALJ ultimately adopted in this case, still retained the capacity to perform unskilled work. (Tr. 319). In response to further questioning from plaintiff's attorney, the VE opined that, based upon the information that she had been supplied, plaintiff's past relevant work was either as a hoist worker, which she described as light, unskilled work, *see* DOT Code 929.687-018, or as a

---

economy.'" *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (citing, Social Security Ruling 82-61)

press operator which is medium, semi-skilled work. (Tr. 321). Following testimony from plaintiff, the VE re-characterized her work as either a forklift operator, which she deemed medium and semi-skilled work, or alternatively, very heavy work, if her job entailed pushing 500 pound bales of cotton around. (Tr. 323-324). Then, in response to the ALJ's subsequent query to characterize plaintiff's work at the cotton gin, the VE re-stated that she was a forklift driver and a hoist worker. (Tr. 325).

Of course, if plaintiff's job was, in fact, a composite job requiring her to perform the duties of *both* a forklift driver and a hoist worker, then it is manifest that a residual functional capacity limited to unskilled work would preclude the ability to perform this work because the forklift operator component of the work is considered semi-skilled. *See* Tr. 325 and SSR 82-61. The ALJ, however, failed to pose specific hypotheticals to the VE to resolve this issue, or to ensure that a worker with plaintiff's residual functional capacity could return to her past relevant work as it is generally performed in the economy. Accordingly, the ALJ's Step Four determination is not supported by substantial evidence.

## Conclusion

Because the ALJ's residual functional capacity assessment and ensuing Step Four determination are not supported by substantial evidence, the court finds that the Commissioner's ultimate conclusion that plaintiff is not disabled, is likewise not supported by substantial evidence.

For the above-stated reasons,

**IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 21st day of July 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE